Cameron **WILLIAMS,** by his mother and next friend, Ky'Sha **RICARD,** and **Taneele Tidey,** by her mother and next friend, **Dawn Tidey,** on their own behalf and on behalf of a class of those similarly situated, Plaintiffs,

v.

Katherine **HUMPHREYS,** in her official capacity as Secretary of the Indiana Family and Social Services Administration, Defendant.

No. IP 00–1090–C H/G.

United States District Court, S.D. Indiana, Indianapolis Division.

Dec. 5, 2000.

Jacquelyn E. Bowie, Indiana Civil Liberties Union, Indianapolis, IN, for plaintiff.

Frances Barrow, Deputy Atty. Gen., Indianapolis, IN, for defendant.

## ENTRY ON MOTIONS FOR SUMMARY JUDGMENT

HAMILTON, District Judge.

Indiana provides public assistance benefits to needy families under the federal Temporary Assistance to Needy Families (TANF) program. As under the old Aid to Families with Dependent Children (AFDC) program, a state that receives TANF funds must require TANF recipients to assign their child support rights to the state to help offset state and federal government costs for benefits paid. See 42 U.S.C. § 608(a)(3) (TANF); see also 42 U.S.C. § 602(a)(26)(A) (1982 ed., Supp. III) (AFDC—repealed 1996). In general, such assignments have been upheld against constitutional challenges with respect to children receiving public assistance benefits. See *Bowen v. Gilliard,* 483 U.S. 587, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1987).

In Indiana, however, not all children in needy families actually receive TANF benefits. Through a policy called the "family benefit cap," when Indiana determines families' needs and calculates TANF cash benefits, it excludes most children born ten or more months after their families became eligible for TANF benefits from those determinations. See Ind.Code § 12–14–2–5.3(b). (The family benefit cap statute includes certain exceptions which are not at issue in this case.)

The issue in this case is whether Indiana may require such excluded children to assign to the State their right to receive payments of child support from a non-custodial parent. As explained below, Indiana's policy of requiring assignments of child support payments for "excluded" children effects an unconstitutional taking of private property for public use without compensation. The court will enter a permanent injunction against enforcement of the policy.

## Background

In administering the TANF program, Indiana has required that all children who live with a family that receives TANF assistance assign their child support to the State. Indiana applies this requirement to children born subject to the family benefit cap established by Ind.Code § 12–14–2–5.3(b). Pursuant to a stipulation of the parties in this case and Fed.R.Civ.P. 23(b)(2), the court certified a plaintiff class defined as follows:

> all past, present and future Indiana children whose non-custodial parent is ordered to pay child support for them, and whose custodial parent or guardian receives, has received or will receive Temporary Assistance for Needy Facilities ("TANF") benefits but whose custodial parent or guardian does not receive additional cash benefits as a result of the child being a part of the TANF family unit, due to the family benefit cap rule.

Order of August 7, 2000. Indiana, acting through its Family and Social Services Administration (FSSA), of which named defendant Katherine Humphreys serves as the Secretary in her official capacity, has required the plaintiffs to assign their child support rights to the State.

Plaintiffs do not challenge in this case the lawfulness of the Indiana family benefit cap itself. The Indiana Court of Appeals recently upheld the cap against constitutional challenges. See *N.B. v. Sybinski*, 724 N.E.2d 1103 (Ind.App.2000) (Indiana family benefit cap does not violate principles of equal protection or sub-stantive due process). Instead, plaintiffs contend that Indiana's assignment policy violates the federal TANF statute and takes their private property without compensation in violation of the Fourteenth Amendment of the United States Constitution.

The parties filed cross-motions for summary judgment. The court heard oral argument on October 6, 2000. The court indicated that it intended to grant plaintiffs' summary judgment motion and to deny defendant's summary judgment motion with this written entry to follow. In addition, plaintiffs renewed their motion for preliminary injunction, which they had previously withdrawn. The court granted plaintiffs' preliminary injunction motion and enjoined Indiana officials from applying the child support assignment requirement to the class of excluded children. The court now grants plaintiffs' motion for summary judgment and denies defendant's motion.

## Summary Judgment Standard

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, the court should grant summary judgment if and only if the record shows there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); *Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir.1998). The parties have submitted this case on stipulated facts, and the case turns on questions of law. There are no material factual disputes.

## Undisputed Facts

In general, except under the family benefit cap described below, TANF cash benefit grants are determined by assessing a family's "standard of need." The standard of need is calculated by taking $155 per

month for the initial dependent child (or $255 for the child and his parent) and adding to that amount $65 for each additional family member who receives TANF assistance. See Ind.Code § 12–24–2–5; Indiana Client Eligibility System ("ICES") Manual § 3010.10.00.[1] By accounting for each family member, the standard of need for the household takes into consideration the minimum subsistence level required for a family of that size to live in Indiana. See *id.* The family is then given 90 percent of that household standard of need in cash assistance. See 470 I.A.C. § 10.1–3–3.1; ICES Manual § 3050.10.00.

TANF cash benefit grants are calculated differently under the family benefit cap. There is no family benefit cap under federal law. Instead, the Indiana family benefit cap exists pursuant to waivers that Indiana received from the federal government in 1994 and 1996. Indiana obtained the waivers on the theory that it would conduct an experiment with the family benefit cap and other limits on benefits. See 42 U.S.C. § 1315(a) (states may receive waivers from federal TANF requirements by seeking approval of experimental, pilot, or demonstration projects that are likely to further TANF's objectives). Under Indiana's waivers, all TANF recipients and applicants are divided into two groups, a "treatment group" and a "control group." See 470 I.A.C. § 14–1–2. Families in the "treatment group" are subject to the family benefit cap. All plaintiffs are members of the "treatment group."

The family benefit cap establishes an exception to the standard of need considerations described above in the calculation of TANF cash grants. A parent or guardian in the "treatment group" does not receive additional TANF cash benefits upon the birth of a dependent child who is born at least ten months after the parent began receiving TANF benefits. Ind.Code § 12–14–2–5.3(b); 470 I.A.C. § 14–1–2. The family's TANF cash benefit grant amount is determined without taking into consideration the income or needs of the excluded child. The Indiana regulation that implements the family cap provides:

> Sec. 2. (a) No additional AFDC [TANF] cash benefit shall be issued due to the birth of a child when the birth occurs more than ten (10) calendar months after the date of authorization for AFDC [TANF], except as specified in this section.
>
> * * *
>
> (c) The additional child and any additional individuals who are required to be included in the assistance unit under Section 402(a)(38) of the Social Security Act shall be included in the need standard for purposes of determining AFDC [TANF] eligibility and shall be considered an AFDC [TANF] recipient and eligible for Medicaid. In determining the AFDC [TANF] payment for a family, the needs and income of the additional child and any additional individuals who were not in the assistance unit at the time of the additional child's birth and would not have been included in the assistance unit at the time of the child's birth had the child not been born will not be considered.

470 I.A.C. § 14–2–2;[2] accord, ICES Manual § 2225.15.00. Children born subject to the family cap are still required, however, to assign their child support rights to the State. See ICES Manual § 2436.05.05. The State asserts it is entitled to keep assigned child support payments until such time as the amount of child support col-

---

1. The ICES Manual contains unpromulgated internal policies and procedures and is used to administer Indiana's TANF program at the local level. Stip. ¶ 4.

2. The statute and regulation include exceptions for a firstborn child of a parent who is under the age of 18, a child born of incest or rape, a child with a substantial physical or mental disability, a child conceived in a month when the family was not receiving assistance, and a child who does not reside with his or her parent. See Ind.Code § 12–14–2–5.3(a); 470 I.A.C. § 14–2–2(b).

lected equals or exceeds the amount of benefits the State has paid to the child's family. See Ind.Code. § 12–17–2–21(e).

Named plaintiffs Cameron Williams and Taneele Tidey were born ten or more months after their mothers, who are in the "treatment group," began receiving TANF benefits. Stip. ¶ 11. Cameron's and Taneele's families did not receive any additional cash benefits after their births. *Id.*

Child support orders from courts are in effect for both Cameron and Taneele. Stip. ¶¶ 12–13. Indiana required Cameron's mother to assign Cameron's child support to the State. Stip. ¶ 14. Indiana also required Taneele's mother to assign Taneele's child support to the State. Stip. ¶ 16. As of July 31, 2000, the State had collected $2,132 of Cameron's child support, of which the State has disbursed $1,243 to his mother. Stip. ¶ 15.[3] As of July 31, 2000, the State had collected $1,010 of Taneele's child support, of which the State has disbursed $400 to her mother. Stip. ¶ 17.

### Discussion

Plaintiffs contend that Indiana's administrative policy requiring assignment of child support by children who are born subject to the Indiana family benefit cap violates 42 U.S.C. § 608(a)(3) and deprives them of property without due process of law and just compensation in violation of the Fourteenth Amendment of the United States Constitution. Because courts ordinarily avoid constitutional questions when a case can be resolved on other grounds, the court considers first the plaintiffs' claim that the Indiana assignment policy violates the federal statute, then turns to plaintiffs' constitutional claim.

### I. *Plaintiffs' Statutory Claim—42 U.S.C. § 608(a)(3)*

■ Federal law requires states to require that children who receive TANF as-

sistance assign their child support payments to the state. The statute provides in relevant part:

> A State to which a grant is made under [42 U.S.C. § 603] shall require, as a condition of providing assistance to a family under the State program funded under this part [42 U.S.C. §§ 601 *et seq.*], that a member of the family assign to the State any rights the family member may have (on behalf of the family member or of any other person for whom the family member has applied for or is receiving such assistance) to support from any other person, not exceeding the total amount of assistance so provided to the family, which accrue (or have accrued) before the date the family ceases to receive assistance under the program . . .

42 U.S.C. § 608(a)(3). The assignment enables reimbursement of the state and federal government for their support of children whose support is the legal responsibility of other persons.

Plaintiffs argue that Section 608(a)(3) actually prohibits Indiana's assignment policy. Plaintiffs focus on the language "on behalf of the family member or of any other person for whom the family member has applied for or is *receiving such assistance.*" They contend that assignments under Section 608(a)(3) are limited to assignments for family members receiving TANF assistance. The court agrees that only such assignments are authorized by Section 608(a)(3), and as explained below, the court concludes that children subject to the family cap cannot be deemed to be "receiving such assistance."

Plaintiffs, however, seek to take the federal statute a step further. They assert that if Section 608(a)(3) does not affirmatively authorize the assignment requirement, then it affirmatively prohibits Indiana from imposing the requirement. The statute contains no such explicit prohi-

---

**3.** The assignment for Cameron is still in effect but ceased to be operable as of August 4, 2000. His family is no longer receiving TANF

cash benefits and his child support arrearage has been paid off. Stip. ¶ 14.

bition, and the court sees no statutory basis for implying one. Plaintiffs have not directed the court to any other statutory provisions which might support such a prohibition. Accordingly, plaintiffs are not entitled to relief on the theory that Section 608(a)(3) prohibits Indiana's assignment requirement.

## II. *Plaintiffs' Constitutional Takings Claim*

Plaintiffs also contend that Indiana's policy of requiring excluded children to assign their child support rights to the State takes private property for a public purpose without compensation, in violation of the Fourteenth Amendment. Indiana requires that child support payments for poor children subject to the cap be assigned to the State, while the child for whose benefit the support payments are to be made receives, plaintiffs contend, nothing in return from the State. The court agrees with plaintiffs on this issue.

### A. *Applying the Teachings of Bowen v. Gilliard*

The foundation for Indiana's constitutional defense of the assignment requirement is the Supreme Court's decision in *Bowen v. Gilliard,* 483 U.S. 587, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1987). There the Court upheld the constitutionality of North Carolina regulations requiring families receiving public assistance to assign child support payments for each child living in the same home. Under the North Carolina regulations at issue, the family received the first $50 per month of child support that was collected for each child, but additional amounts benefitted the State. The North Carolina program also did not include any family cap. In determining a family's level of benefits, therefore, each child was counted. Each additional child in a family added modestly to the level of monthly benefits. 483 U.S. at 591, 107 S.Ct. 3008 (for seventh child in family, increase in payments of $10 per month).

The plaintiffs in *Bowen v. Gilliard* argued that requiring the assignment of child support amounted to an unconstitutional taking of private property for public use. Their theory was that each child had a property right under state law to have support payments used for his or her exclusive benefit, and that the assignment requirement stripped the child of that right because the money would effectively be used for the benefit of the entire family. The Supreme Court rejected the theory. The Court applied the three-factor analysis developed in *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 124–25, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), to evaluate claims of regulatory takings. See *Bowen,* 483 U.S. at 606, 107 S.Ct. 3008. The Court's detailed analysis highlights the differences between that case and this one.

The first *Penn Central* factor is the economic impact of the assignment on the child in question. The Court assumed that all family net income would essentially be used jointly by the family. However, the Court also relied on facts not present here:

> Moreover, any diminution in the value of the support payments for the child is mitigated by the extra $50 that the family receives as a result of the assignment, by the extra AFDC benefits that are received by the inclusion of an additional family member in the unit, and by the fact that the State is using its own enforcement power to collect the support payments and is bearing the risk of nonpayment in any given month. Whatever the diminution in value of the child's right to have support funds used for his or her "exclusive" benefit may be, it is not so substantial as to constitute a taking under our precedents.

*Id.* at 607, 107 S.Ct. 3008.

Under Indiana's family cap, there is no "extra $50 that the family receives as a result of the assignment." Nor does the family receive any "extra benefits" by including an additional family member in the

unit. Nor is Indiana bearing any "risk of nonpayment in any given month." Indiana does not increase the family's benefits a penny by reason of the child's presence in the family, whether the support payments are collected in a given month or not. The only entity that benefits from actually collecting a payment under the Indiana program is the State, unless all prior assistance has been reimbursed.[4]

Moreover, the economic impact on plaintiffs is substantial. As of July 31, 2000, Indiana had withheld $889 and $610 from the child support payments of the two named plaintiffs, respectively. There is no evidence that the two named plaintiffs have any other sources of support. Each family was already living below the federal poverty level, and each family's TANF cash grant equaled only 90 percent of the family's subsistence needs prior to the excluded child's birth.

The second *Penn Central* factor in *Bowen v. Gilliard* was "the extent to which the regulation has interfered with distinct investment-backed expectations." That factor was developed originally to distinguish between uses of property that were merely abstract possibilities and those in which an owner had invested resources with the expectation of enjoying some return. See

*Penn Central,* 438 U.S. at 124, 98 S.Ct. 2646. As applied in the context of public assistance, the Court wrote in *Bowen v. Gilliard* that the child receiving support payments "holds no vested protectable expectation that his or her parent will continue to receive identical support payments on the child's behalf, and that the child will enjoy the same rights with respect to them." 483 U.S. at 607, 107 S.Ct. 3008. To support this proposition, the Court cited a decision of the Supreme Court of North Carolina, *Layton v. Layton,* 263 N.C. 453, 456, 139 S.E.2d 732, 734 (1965) (under North Carolina law, support is "not a property right of the child").

■ Under Indiana law, however, children do have a property interest in child support. Persons who receive child support payments are deemed trustees who are obliged to spend the money for the benefit of the child, and the right to receive child support cannot be contracted away or lost through laches or estoppel. See, *e.g., Straub v. B.M.T. by Todd,* 645 N.E.2d 597, 599–600 (Ind.1994) (invalidating agreement that purported to absolve biological father of child support obligation prospectively); *Lizak v. Schultz,* 496 N.E.2d 40, 42 (Ind.1986) (recipient of child support payments deemed a trustee for

---

4. In this respect, the Indiana program appears to be unique. The parties have identified approximately 20 other state TANF programs that involve some type of family benefit cap. The parties disagree about whether any state follows an assignment policy like Indiana's. Without analyzing the other state laws in detail or resolving all the parties' disputes about the meaning of other states' laws, it is apparent that several states have designed family caps that are different from Indiana's in ways that are relevant to the plaintiffs' claims.

For example, in some states, the family of a child born subject to the family cap receives additional TANF benefits for that child but at a reduced rate. See, *e.g.,* Conn.Gen.Stat.Ann. § 17b–112(e)(2) (child born ten months after parent began receiving TANF assistance receives 50 percent of normal additional assistance); Fla.Stat.Ann. § 414.115 (first child born ten months after TANF eligibility receives 50 percent of normal additional assis-

tance; second or later children receive no additional assistance). The Indiana family benefit cap statute authorizes rules providing for vouchers for goods and services related to child care that do not exceed half the value of the additional cash benefits the excluded child's family would receive but for the cap, see Ind.Code § 12–14–2–5.3(c), but Indiana does not contend that it provides such benefits here.

Under a different approach, other states deny additional benefits to children born after a parent's TANF eligibility begins but do not require excluded children to assign all of their child support payments to the State. See, *e.g.,* Cal. Welf. & Inst.Code § 11450.04(e) (100 percent of the excluded child's child support is paid to the assistance unit); Va. Code Ann. § 63.1–105.7 (total value of excluded child's child support is received by the child's custodial parent); N.J. Stat.Ann. § 44:10–49 (allows for $50 pass-through of child support for all assistance units).

child); *Pickett v. Pickett,* 470 N.E.2d 751, 755 (Ind.App.1984) (estoppel and laches could not bar enforcement of child support obligation); see also *K.S. v. R.S.,* 669 N.E.2d 399, 405–06 (Ind.1996) (judgment based on agreement between parents with respect to child support is not binding on child); Ind.Code § 31–16–21–1(a) (whenever a child support order is in force, "the individual required to pay the support shall pay the support"). "The right to the support lies exclusively with the child." *Straub,* 645 N.E.2d at 599.

Because Indiana children have a clear right to child support, depriving a child of some or all of her child support payments interferes with the child's property interest. See *Winters v. Mowery,* 836 F.Supp. 1419, 1426 (S.D.Ind.1993) ("It is undisputed that Plaintiffs have a legitimate claim of entitlement to the support payments"; plaintiffs also had investment-backed expectation in interest that accrued on child support payments held by county clerk); see also *Bennett v. White,* 865 F.2d 1395 (3d Cir.1989) (affirming determination that state agency had taken private property by holding child support payments of AFDC recipients in excess of amount permitted by federal law).

The third *Penn Central* factor is the character of the governmental action. In *Bowen v. Gilliard,* the Supreme Court focused on the "hard choices" the government must make in allocating benefits in public assistance programs. 483 U.S. at 608, 107 S.Ct. 3008. The Court wrote that including child support as part of the family income did not implicate the type of concerns the Takings Clause protects, for the requirement did not force " 'some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' " *Id.,* quoting *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960).

The Court made this statement, however, with respect to a regulation that effected a rough exchange between the state and the child whose support payments had to be assigned to the state. The rough exchange was that, in return for the assignment of support payments, the child was included in the family unit receiving assistance, the family's overall benefits were increased to account for the child's needs and presence, and in any event the child received the first $50 per month of any collected support payment.

Under the Indiana family cap program, there simply is no comparable exchange, rough or otherwise, between the State and the excluded child. In "return" for the excluded child's assignment of support payments, the family's overall benefits do not change at all. By mandate of Indiana law, those benefits are calculated without taking into account the excluded child's needs. See 470 I.A.C. § 14–2–2(c). Moreover, the child cannot receive even the smallest fraction of any collected support payments so long as the child's entire family is receiving more in State benefits than the amount of the collected support payments. In effect, Indiana is simply taking the excluded child's property for the public purpose of helping to finance a public assistance program.

Thus, Indiana's policy of requiring excluded children to assign their child support payments to the State satisfies all three prongs of the takings test in *Penn Central* and *Bowen v. Gilliard.*

B. *Deeming Excluded Children to be Recipients of Benefits?*

Indiana contends that the takings claim must fail, nevertheless, because in reality the excluded child actually receives TANF benefits. Following the reasoning of the Supreme Court in *Bowen v. Gilliard,* Indiana argues that the excluded child's needs will of course not be ignored by her family and that a share of the TANF benefits paid to the other family members will be spent to care for the excluded child. See 483 U.S. at 605–06, 107 S.Ct. 3008 (argument that taking occurs when child support payments earmarked for benefit of

one child are transmitted to custodial parent for benefit of entire family "places form over substance, and labels over reality").

*Bowen v. Gilliard* shows that a state may treat an entire family as the relevant unit for public assistance, and that, in determining the amount of assistance for the family, a state may take into account income received by any members of the family. The issue in this case, however, is whether Indiana may take into account income received by a member of the family whose needs, whose very existence, the State does *not* consider in determining the amount of assistance to the family. In other words, Indiana is claiming in this case (a) that it is entitled not to treat a "capped" child as a member of the family when determining needs and benefits, but (b) that, after ignoring and excluding that child from the family unit in making those determinations, the State is nevertheless entitled to treat the excluded child as a family member when trying to recoup for the State the costs of providing assistance designed to meet the needs of all *other* members of the excluded child's family.

To support its claim that an excluded child can reasonably be deemed a recipient of TANF assistance, Indiana relies on its regulation and its ICES Manual. The regulation simply declares the child "shall be considered an AFDC [TANF] recipient and eligible for Medicaid." 470 I.A.C. § 14–2–2(c); see also ICES Manual § 2225.15.00. Apart from these bare declarations, however, the family benefit cap statute and other more substantive provisions of the Indiana regulations and the ICES Manual show that excluded children do not receive TANF assistance in any legally relevant way.

First, Indiana's family benefit cap statute affirmatively prohibits payment of TANF benefits to anyone on behalf of excluded children. The statute provides in relevant part that "an additional payment (other than for medical expenses payable

under IC 12–15) *may not be made* for a dependent child who is born more than ten (10) months after the date the family qualifies for assistance under this article." Ind. Code. § 12–14–2–5.3(b) (emphasis added).

Second, although 470 I.A.C. § 14–2–2(c) declares that excluded children "shall be considered" TANF recipients, the substantive portion of the regulation turns that declaration into an Orwellian distortion of language. The substantive portion provides: "In determining the [TANF] payment for a family, *the needs and income of the additional child . . . will not be considered.*" 470 I.A.C. § 14–2–2(c) (emphasis added). Merely labeling a child a recipient of TANF benefits does not make her a recipient—not when the law unmistakably provides that neither the child's needs nor the child's existence are taken into account in determining benefits for the child's family.

Third, consistent with the family benefit cap statute and the substantive provision of 470 I.A.C. § 14–2–2(c), ICES Manual Section 2225.15.00 also shows that excluded children do not receive TANF assistance. Section 2225.15.00 states in its second paragraph: "The TANF grant amount *will not be increased to add a child* who was born more than ten calendar months after the initial effective date of TANF benefits." (Emphasis added.) Two pages later, Section 2225.15.00 explains to local administrators that, upon the birth of an excluded child, a TANF family's cash grant must be calculated "*as if the baby had not been born,*" by excluding the baby's needs and income in the cash grant calculation. *Id.* (emphasis added). A few lines later, in a paragraph that describes how certain data should be entered into FSSA's computer system, Section 2225.15.00 states: "If the 'Family Cap?' field shows 'Y' for the child and no exception reason code is entered, the baby and any individuals he draws in *will be excluded from the TANF payment.*" *Id.* (em-

phasis added).[5]

### C. Requirements of Federal Law?

Indiana also defends its requirement by arguing that federal law requires the State to insist on an assignment of child support paid on behalf of excluded children. Like plaintiffs, Indiana also relies on 42 U.S.C. § 608(a)(3). The federal statute requires states to impose as a condition of receiving TANF benefits "that a member of the family assign to the State any rights the family member may have (on behalf of the family member or of any other person for whom the family member has applied for or is receiving such assistance) to support from any other person . . ."

■ By its terms, Section 608(a)(3) requires assignments of child support only with respect to persons for whom the family is receiving assistance. Children born subject to the family benefit cap do not receive TANF cash assistance, and their families do not receive TANF assistance for them. The terms of Section 608(a)(3) therefore do not require Indiana to order that excluded children assign their child support rights to the State. This interpretation of Section 608(a)(3) is consistent with the principle that statutes should be read, if reasonably possible, so as to avoid rendering them unconstitutional. See, e.g., *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988), citing *Hooper v. Cali-fornia*, 155 U.S. 648, 657, 15 S.Ct. 207, 39 L.Ed. 297 (1895) (courts must construe statutes consistently with the Constitution if the statutory language will support any such construction).[6]

Indiana also relies on the Third Circuit's decision in *C.K. v. New Jersey Department of Health and Human Services*, 92 F.3d 171, 191 (3d Cir.1996), to support its assertion that children born subject to the family benefit cap actually receive TANF assistance. In *C.K.*, plaintiffs challenged the New Jersey family benefit cap waiver. The plaintiffs claimed that the cap violated the federal statute's mandate that State AFDC programs provide benefits "to all eligible individuals." The district court had rejected plaintiffs' claim, reasoning that excluded children shared in the AFDC assistance provided to the household and therefore received benefits. See 92 F.3d at 191 (discussing district court decision). The Third Circuit agreed with the district court "in general" that the New Jersey family cap did not deprive otherwise eligible individuals of benefits in violation of the statute. *Id.* at 192. However, the court ultimately based its decision to deny relief to plaintiffs on the fact that the New Jersey family cap was enacted pursuant to a federal waiver. *Id.* at 192–93. Under the waiver, New Jersey was not required to comply with the statutory provision at issue. In distancing itself from the district court's reasoning, the Third Circuit court noted that there was an "undeniable tension" between setting

---

**5.** Federal regulations define TANF "assistance" as "cash, payments, vouchers, and other forms of benefits designed to meet a family's ongoing basic needs (i.e., for food, clothing, shelter, utilities, household goods, personal care items, and general incidental expenses)." 45 C.F.R. §§ 260.30, 260.31(a)(1). TANF "assistance" does not include various non-income related services including, for example, child care and transportation for working families. See 45 C.F.R. § 260.31(b)(3) (identifying other services that are not TANF "assistance"). Indiana does not contend that any non-cash forms of assistance are relevant here. See Def. Supp. Mem. at 3 ("Whether assistance includes more than cash does not matter in this particular case.").

**6.** Section 608(a)(3) does not address state family benefit caps any more specifically. The family benefit caps are creatures of only state law. A proposal to include a federal family benefit cap as part of the TANF legislation was not successful. See H.R.Rep. No. 104–651, at 1346–47 (1996), *reprinted in* 1996 U.S.C.C.A.N. 2183, 2405–06 (report of Ways and Means Committee) (approving federal family benefit cap); H.R. Conf. Rep. No. 104–725, at 285 (1996), *reprinted in* 1996 U.S.C.C.A.N. 2649, 2673 (family benefit cap provision deleted from final law).

maximum family benefit amounts, which the Supreme Court approved in *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), and imposing a family cap that could operate to deprive some otherwise eligible persons of all benefits. *C.K.*, 92 F.3d at 192.

In contrast to *C.K.*, Indiana's waiver from the federal government does not decide this case. The waiver does not require Indiana to require assignment of child support for excluded children. The New Jersey program at issue in *C.K.* was also different from the Indiana family benefit cap because it allowed affected families to retain more earned income. See 92 F.3d at 179. The Indiana family benefit cap provides no such benefit to families. More fundamentally, there is no indication in *C.K.* that New Jersey was trying to carry out the sort of whipsaw policies Indiana has adopted: excluding a child for purposes of calculating family benefits, while at the same time trying to include that same child as a "recipient" of benefits for the sole purpose of demanding assignment of the excluded child's own (and virtually only) property.

■ In sum, Indiana cannot exclude children from their families when calculating the families' needs and assistance levels, yet still insist on including those children in their families for the purpose of requiring that child support payments on behalf of those excluded children be assigned in their entirety to the State. The Indiana policy is not required by federal law. To the contrary, the policy amounts to a taking of private property for public use without just compensation. The court therefore grants plaintiffs' motion for summary judgment and denies defendant's motion for summary judgment.

III. *Remedies*

■ The court will issue a permanent injunction prohibiting defendant from enforcing the administrative policy requiring the assignment of child support by children who are subject to the family benefit cap. Plaintiffs also seek an order requiring FSSA to provide actual notice to all class members of the outcome of this action and of their right to request a "re-examination" of their assignment of child support pursuant to the administrative procedures outlined in 470 I.A.C. § 2-5-19. See *Quern v. Jordan*, 440 U.S. 332, 349, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (approving modified notice that informed class that lawsuit was over and that there were state administrative procedures they might wish to pursue). Plaintiffs propose that the notice also inform class members that they may seek re-examination by making a written request within fifteen days of the date they receive the notice.

The court believes that such ancillary notice relief is appropriate here. However, Indiana has requested that the court provide two types of notice—one in the form that plaintiffs request for class members whose non-custodial parents *have* made child support payments during the assignment period; and a second notice to class members whose non-custodial parents *have not* made any child support payments during the assignment period. Indiana reasonably wants to try to ensure that the custodial parents of class members for whom the State has not collected any support will understand that a distribution to them is not likely to occur even if they pursue their administrative remedy.

The court intends to grant ancillary notice relief that takes into account Indiana's concern that it not be flooded with futile requests for administrative relief on behalf of class members whose non-custodial parents have not been making any payments. The court will hold a hearing on Thursday, December 21, 2000, at 9:30 a.m. in Room 344, U.S. Courthouse, Indianapolis, Indiana, to address the precise form of relief. Counsel shall confer for the purpose of attempting to reach agreement on the forms of notice to be provided. Information about how FSSA intends to determine which class members receive which form of notice would also be helpful. For

now, the preliminary injunction issued October 6, 2000, remains in effect.

So ordered.