Brendan WILLIAMS, by His
Mother and Next friend,
et al., Plaintiffs,

v.

Jim MARTIN, in his official capacity as
Commissioner, Georgia Department of
Human Resources, Defendant.

Civil Action File No. 1:01–
CV–3342–TWT.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 22, 2003.

Phyllis J. Holmen, Lisa Jane Krisher, Georgia Legal Services Program, Atlanta, GA, for plaintiff.

William C. Joy, Dennis Robert Dunn, Thurbert E. Baker, Shalen S. Nelson, Office of State Attorney General, Atlanta, GA, for defendant.

## ORDER

THRASH, District Judge.

This is an action challenging the constitutionality of one provision of Georgia's public assistance program. It is before the Court on Plaintiffs' Motion for Summary Judgment [Doc. 29] and Defendant's Motion for Summary Judgment [Doc. 32]. In summary, the Court holds that the assignment of child support payments for "capped" children pursuant to Georgia's Temporary Assistance to Needy Families program is not an unconstitutional taking. For the reasons set forth below, the Court DENIES Plaintiffs' Motion for Summary Judgment and GRANTS Defendant's Motion for Summary Judgment.

## I. BACKGROUND

The Defendant Jim Martin is the Commissioner of the Georgia Department of Human Resources and administrator of the Temporary Assistance to Needy Families ("TANF") program. He is sued in his official capacity as administrator of the program. TANF is Georgia's current wel-

fare program for families. The Plaintiffs are minor children of former recipients of benefits under the program.

The Personal Responsibility and Work Opportunities Reconciliation Act of 1996, 42 U.S.C. § 601, repealed the Aid to Families With Dependent Children program, the federal program for providing welfare assistance to needy families, and replaced it with the TANF block grant program. In order to receive this federal block grant, a state must submit a plan demonstrating compliance with federal law to the United States Department of Health and Human Services for approval. 42 U.S.C. § 602(a). The state must also certify that it operates a child support enforcement program consistent with the requirements of Title IV–D of the Social Security Act. 42 U.S.C. § 602(a)(2). As a condition of eligibility for TANF benefits, an applicant must assign to the state any right to collect child support payments for all persons for whom TANF is sought. 42 U.S.C. § 608(a)(3).

Georgia is a participant in the TANF block grant program. With some limited exceptions, families receiving TANF assistance in Georgia are subject to a "family cap" under which TANF benefits do not increase as a result of a birth of additional children during the time that the family is receiving TANF assistance. O.C.G.A § 49–4–186. The state requires TANF recipients to assign to the state the right to establish and collect child support for any child who is subject to the family cap even though inclusion of the "capped" child does not increase the family's TANF benefits. Plaintiffs contend that this policy and practice violate federal law and the due process and equal protection clauses of the Constitution.

The Plaintiff Brendan Williams was born on May 9, 1998. At the time, his mother, Michelle Pait, was receiving Georgia TANF benefits for herself and Brendan's half-brother Byron. Michelle Pait does not receive child support for Byron. Ms. Pait reported Brendan's birth to the Department of Family and Children Services ("DFCS") and signed papers to assign to the state her rights to child support for Brendan. Brendan was excluded from the TANF benefits under Georgia's "family cap." In January 1999, Brendan's father began to pay child support in the amount of $161 per month. Because Brendan is a "capped" child, Ms. Pait continued to receive TANF benefits at the level of a family of two, even after Brendan was born. (Pait Dep. at 19–21.)

The Plaintiff Zon'tarrio' Q. Boston was born on January 10, 2000. At the time, his mother, Audrey Boston, was receiving TANF benefits for her daughter Yerdua and herself. Yerdua's father was paying child support. When Ms. Boston reported Zon'tarrio's birth to DFCS, her social worker had her assign Zon'tarrio's right to child support to DFCS. Zon'tarrio's father began paying child support through the State Office of Child Support Enforcement in August 2000. Plaintiff Zon'tarrio' Q. Boston is also a "capped" child, and a portion of the child support paid by his father has been kept by the state, pursuant to the policy set forth above. (Boston Dep. at 98.) The state continued to receive child support payments made by the fathers of Brendan Williams and Zon'tarrio' Q. Boston after the families stopped receiving TANF benefits. (Defendant's Responses to Plaintiffs' First Requests for Admission, ¶¶ 25–26.) For Plaintiff Zon'tarrio' Q. Boston, the assignments remain in effect and offset public assistance which he alleges he is no longer receiving. For Plaintiff Brendan Williams, the challenged policy keeps him and the Pait family from electing to reapply for TANF benefits.

The Plaintiffs claim that the Georgia TANF program violates federal law, 42 U.S.C. § 608(a)(3), by requiring assignment of child support payments for "capped" children. The Plaintiffs also claim that this mandatory assignment of child support constitutes a taking in violation of the Fourteenth Amendment. In their Amended Complaint, Plaintiffs sought both retroactive monetary relief and prospective injunctive relief. Defendant moved this Court to dismiss these claims on the grounds that the suit is barred by the Eleventh Amendment. The Court dismissed Plaintiffs' claims seeking retroactive relief, but denied the motion as to prospective relief pursuant to *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The Plaintiffs and Defendant separately move for summary judgment on Plaintiffs' statutory and constitutional claims. The Defendant additionally argues that Plaintiffs lack standing and that the suit is not yet ripe for adjudication.

## II. *SUMMARY JUDGMENT STANDARD*

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a

genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. *DISCUSSION*

### A. *Standing*

 The Defendant challenges Plaintiffs' standing to bring this action. The Supreme Court has set forth an analytical framework for resolving issues of standing that includes both "constitutional" and "prudential" requirements. *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir.1994); *Saladin v. City of Milledgeville*, 812 F.2d 687, 690 (11th Cir.1987). The Defendant's argument addresses only the constitutional requirements. The constitutional requirements derive from Article III's limitation of federal jurisdiction to those situations in which a justiciable "case or controversy" exists between the litigants. *Warth*, 422 U.S. at 498, 95 S.Ct. 2197. The Constitution imposes three threshold requirements that a plaintiff must satisfy in order to seek relief in federal court. A plaintiff must show: (1) that he has suffered an actual or concrete injury; (2) that is causally connected to the defendant's conduct; and (3) that is likely to be remedied by a favorable decision of the court. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471–72, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). These requirements ensure that the federal courts are not vehicles to resolve general grievances or to issue advisory opinions, but are utilized by persons with concrete factual situations which require resolution. *Id.* at 472, 102 S.Ct. 752.

 Without a showing of injury in fact, even if Defendant's actions were ille-

gal, Plaintiffs' claims are not justiciable. An "injury in fact" is an invasion of a legally protected interest which is both "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Bischoff v. Osceola County, Fla.,* 222 F.3d 874, 883 (11th Cir. 2000). "Absent a redressable injury, a judicial determination of a plaintiff's claim would amount to an advisory opinion prohibited by Article III's case and controversy requirement." *Church v. City of Huntsville,* 30 F.3d 1332, 1335 (11th Cir. 1994) (citing *Valley Forge,* 454 U.S. at 471–72, 102 S.Ct. 752).

The Defendant specifically contends that Plaintiffs do not suffer a redressable injury in fact, and, therefore, are prohibited from pursuing any claim for prospective relief. Specifically, the Defendant asserts that Plaintiffs are seeking declaratory and injunctive relief against the state based on alleged past violations of federal and constitutional law. Because Michelle Pait and Audrey Boston and their respective families are presently neither recipients of TANF nor applicants for TANF, Defendant argues Plaintiffs' claims fail to allege a real and immediate threat of future injury which may be redressed by prospective relief.

The State of Georgia continues to receive child support payments made by the non-custodial parent of a "capped" child after the child's family has stopped receiving TANF benefits. The amount of TANF benefits paid by the state to a family that has not been recovered by the state is called Unreimbursed Public Assistance ("UPA"). When a family ceases to receive TANF benefits, the UPA is prorated per child in the family and is to be repaid by each child's non-custodial parent from his or her court-ordered child sup-

port obligation. (Bowen Dep. at 48–49.) Zon'tarrio' Q. Boston's family stopped receiving TANF benefits when their case was closed in May 2001. The UPA amount listed for the Boston family as of August 28, 2002, was $18,351.67. (Bowen Dep. at 105, Exs. 11–12.) As the state can still legally use child support payments for Zon'tarrio' to repay the Boston family UPA, prospective relief could prevent the state from retaining these payments. Thus, Plaintiff Zon'tarrio' Q. Boston asserts an injury sufficiently concrete and redressable to satisfy the constitutional requirements of standing.

Brendan Williams' family stopped receiving TANF benefits when their case was closed in May 2000. As of March 2002, Brendan's noncustodial parent no longer has any outstanding UPA debt. (Bowen Dep. at 59.) Thus, the state will not retain any money from future child support payments for Brendan to repay past TANF obligations. Prospective relief does not serve to prevent the state from taking child support payments from Brendan for past TANF obligations, as the state could not legally retain these payments even without such relief. But prospective relief may prevent the state from retaining support payments for Brendan for any future TANF obligations. The Plaintiffs allege that Brendan could be a TANF recipient in the future, as his family has not exhausted their lifetime benefits. At present, the required assignment of child support payments for "capped" children keeps Brendan and the Pait family from electing to receive TANF benefits. The injunctive relief sought by Plaintiffs would prevent the state from retaining support payments for Brendan without providing him TANF benefits. Thus, Brendan also asserts a claim for concrete and redressable injury in fact and thereby

meets the constitutional requirements for standing.

### B. *Ripeness*

The Defendant also asserts that the Plaintiffs' claims are not ripe for adjudication. In determining whether an issue is ripe for adjudication, a court must find that "there is sufficient injury to meet Article III's requirement of a case or controversy" and, if so, that "the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court." *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1244 (11th Cir.1998) (citing *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir.1997)). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (quoting 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3532, p. 112 (1984)). Because the Plaintiffs currently neither receive nor are applying for TANF benefits, Defendant asserts Plaintiffs' case is not yet ripe. With respect to Zon'tarrio' Q. Boston, the Defendant's argument ignores the continuing UPA obligation owed from his child support payments after discontinuation of his family's TANF benefits. Zon'tarrio's claim is clearly ripe for adjudication. The Defendant's argument is more weighty regarding Plaintiff Brendan Williams. Further retention of Brendan's child support by the state is contingent not only upon continued payments by Brendan's father but also upon the Paits' future participation in the TANF program. However, as noted above, Brendan and his family are presently allegedly injured by the state's policy requiring assignment of child support payments for "capped" children. Their deci-

sion not to participate in Georgia's TANF program is due primarily to this challenged policy. Moreover, forcing the Paits to apply for TANF benefits does not further the "definition of issues" or advance the "maturity of the claim." Thus, the Court holds that both Plaintiffs' cases are sufficiently ripe for adjudication.

### C. *Plaintiffs' Statutory Claim*

The Plaintiffs assert that federal law prohibits Defendant's policy requiring assignment of "capped" children's court-ordered child support. The statute, 42 U.S.C. § 608(a)(3), mandates that states require children who receive TANF assistance to assign their child support payments to the state. The statute provides, in relevant part:

> A State to which a grant is made under section 603 of this title shall require, as a condition of providing assistance to a family under the State program funded under this part, that a member of the family assign to the State any rights the family member may have (on behalf of the family member or of any other person for whom the family member has applied or is receiving such assistance) to support from any other person, not exceeding the total amount of assistance so provided to the family, which accrue (or have accrued) before the date the family ceases to receive assistance under the program....

42 U.S.C. § 608(a)(3)(A). Plaintiffs focus on the language "on behalf of the family member or of any other person for whom the family member has applied or *is receiving such assistance*." They argue that the assignments mandated by Section 608(a)(3) are limited to assignments for family members receiving TANF assistance. The Defendant contends that "capped" children are in fact receiving TANF assistance and that the state's child

support assignment requirement is not barred by Section 608(a)(3).

Setting aside for the moment the issue of whether the "capped" children receive TANF assistance, the Court holds that the assignment requirement is not prohibited by Section 608(a)(3). Even if Georgia's program denies "capped" children TANF assistance, its assignment requirement does not exceed the bounds provided by Section 608(a)(3). Section 608(a)(3) does not expressly authorize states to require assignment of child support for children not receiving TANF assistance, but the provision also does not affirmatively prohibit Georgia from imposing the requirement. *See Williams ex rel. Ricard v. Humphreys*, 125 F.Supp.2d 881, 885 (S.D.Ind.2000). The statute contains no explicit prohibition, and the Court sees no statutory or other basis for implying one. *Id.* at 885–86. As Georgia's child support assignment requirement does not violate 42 U.S.C. § 608(a)(3), summary judgment for Defendant on Plaintiffs' statutory claim is proper.

D. *Plaintiffs' Constitutional Takings Claim*

■ The Plaintiffs also contend that Georgia's policy of requiring families to assign the child support rights of "capped" children to the state takes private property for a public purpose without compensation, in violation of the Fourteenth Amendment. In *Bowen v. Gilliard*, 483 U.S. 587, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1987), the Supreme Court upheld the constitutionality of a North Carolina regulation requiring families receiving public assistance to assign child support payments to the state for each child living in the same home. In evaluating whether the North Carolina regulation constituted a "taking," the Court relied on an ad hoc factual inquiry into the circumstances of the case. *Id.* at 606, 107 S.Ct. 3008 (citing *Connolly v.*

*Pension Benefit Guaranty Corp.*, 475 U.S. 211, 224, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986)). To aid in this determination, the Court employed the three-factor analysis developed in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).

The first *Penn Central* factor is the economic impact of the regulation on the claimant. *Bowen*, 483 U.S. at 606, 107 S.Ct. 3008. With respect to the North Carolina regulation, the Supreme Court held that any reduction in the value of support payments received by a child was mitigated by the benefits received by the child due to his inclusion in the family assistance unit. *Id.* at 607, 107 S.Ct. 3008. The benefits provided to the child by the North Carolina regulation included an extra $50 received by the family, extra AFDC benefits based on an additional family member, the state's enforcement power to collect support payments, and the state's bearing the risk of the parent's failure to pay. *Id.*

Plaintiffs contend that, pursuant to Georgia's family cap, the state has, unlike North Carolina in *Bowen*, withheld their child support payments without providing them any TANF assistance in return. Defendant concedes that the "capped" children are not included in calculation of monthly maximum TANF grants. Before Plaintiff Zon'tarrio' Q. Boston was added to the Boston TANF family assistance unit, the Bostons' maximum monthly TANF grant amount was $155. After Zon'tarrio' was added to the family assistance unit, the maximum TANF grant amount remained $155. (Boston Dep. at 55, Ex. 14.) Before Plaintiff Brendan Williams was added to the Pait TANF family assistance unit, the Pait family's maximum monthly TANF grant was $235. After Brendan was added to the family

assistance unit, the maximum TANF grant amount remained $235. (Pait Dep. at 21.)

However, the aid that the state grants to a family assistance unit is not limited to TANF monthly grants. Families may also receive GAP payments. These GAP payments reflect the difference between the family's Standard of Need and the TANF monthly grant they receive. As the family's Standard of Need increases, the family's potential GAP payments also increase. The addition of "capped" children to a family assistance unit increases that family's Standard of Need and, thus, increases the family's potential GAP payments. The additions of Zon'tarrio' Q. Boston and Brendan Williams to their families' assistance units are no exception. Before Zon'tarrio' was added to the Boston TANF unit, the Bostons' Standard of Need was $235. After Zon'tarrio' was added, this Standard of Need was raised to $356. As their TANF monthly maximum grant remained constant at $155, the Bostons' potential GAP payments increased from $80 to $201, an increase of $121 per month. (Plaintiffs' Responses to Defendant's First Requests for Admission, ¶ 10.) The Boston family received $2,030 in the form of GAP payments while receiving TANF benefits. (Plaintiffs' Responses to Defendant's First Requests for Admission, ¶ 12.) Similarly, before Brendan was added to the Pait TANF unit, the Paits' Standard of Need was $356. After Brendan was added, the Standard of Need was raised to $424. As their TANF monthly maximum grant remained constant at $235, the Paits'

potential GAP payments increased from $121 to $189, an increase of $68 per month. (Plaintiffs' Responses to Defendant's First Requests for Admission, ¶ 9.) The Pait family assistance unit received $1,122 in GAP payments while receiving TANF benefits. (Plaintiffs' Responses to Defendant's First Requests for Admission, ¶ 11.) Plaintiffs' families' receipt of GAP payments mitigates the adverse economic impact on Plaintiffs of the assignment of their child support to the state.[1]

Moreover, any economic harm to Plaintiffs stemming from the assignment of their child support to the state is also mitigated by the state's role in collecting these support payments. Though the state, unlike North Carolina in *Bowen,* does not bear the risk of nonpayment of child support (as GAP payments are not made when child support funds are not received), the state does use its own enforcement resources to collect these payments. As the state provides significant assistance to Plaintiffs and their families in exchange for assignment of Plaintiffs' child support payments, the economic impact of the TANF regulation on Plaintiffs does not justify finding an unconstitutional taking.

■■ The second *Penn Central* factor is the extent to which the regulation interferes with the claimant's investment-backed expectations. *Penn Central,* 438 U.S. at 124, 98 S.Ct. 2646. In *Bowen,* the Supreme Court held this factor largely inapplicable, as the child receiving support

---

1. The Supreme Court has held that a state's conversion of child support owed to a single child in a family into general support provided to the entire family is not an unconstitutional taking. *Bowen,* 483 U.S. at 606–07, 107 S.Ct. 3008. "Although it is true that money which was earmarked for a specific child's or children's 'best interest' becomes a part of a larger fund available for all of the children, the difference between these con-

cepts is, as we have discussed, more theoretical than practical." *Id.* at 606, 107 S.Ct. 3008. As both money designated for a single child and money designated for that child's family are likely to be used in a similar fashion by the receiving household, the conversion from funds for the child to funds for the family does not constitute a taking of the child's property. *Id.* at 605, 107 S.Ct. 3008.

payments "holds no vested protectable expectation that his or her parent will continue to receive identical support payments on the child's behalf, and that the child will enjoy the same rights with respect to them." *Bowen,* 483 U.S. at 607, 107 S.Ct. 3008. The Court supported this contention with a decision of the Supreme Court of North Carolina asserting that, in North Carolina, child support is not a property right of the child. *Id.* (citing *Layton v. Layton,* 263 N.C. 453, 139 S.E.2d 732 (1965)). By contrast, Georgia recognizes a child's property interest in child support. *Georgia Dept. of Human Resources ex rel. Holland v. Holland,* 263 Ga. 885, 886, 440 S.E.2d 9 (1994); *Stewart v. Stewart,* 217 Ga. 509, 510, 123 S.E.2d 547 (1962). However, as this right may be modified by parental election or by law, it similarly does not give the child a vested expectation in continued identical child support payments.

▬▬▬ Child support payments may be modified at the custodial parent's election. In Georgia, custodial parents are not owners but mere trustees of the funds paid for a child's benefit. *Holland,* 263 Ga. at 886, 440 S.E.2d 9; *Stewart,* 217 Ga. at 510, 123 S.E.2d 547. They are charged with the duty of ensuring that child support is applied for the benefit of the children. *Law Office of Tony Center v. Baker,* 185 Ga.App. 809, 810, 366 S.E.2d 167 (1988). A custodial parent may, however, exercise the child's right to child support at her election. *Holland,* 263 Ga. at 886, 440 S.E.2d 9. One way in which a parent may modify child support payments is through assignment of child support rights in re-

turn for temporary need-based assistance.[2] *Wehunt v. Ledbetter,* 875 F.2d 1558, 1566 (11th Cir.1989). This gives states the opportunity to recoup the financial drain imposed by the welfare system on the state and federal treasuries. *Id.* As custodial parents have the ability to assign child support payments, the child cannot have any vested expectations in continued child support.

The prospective right to child support payments may also be modified by law. O.C.G.A. § 19–6–19 outlines the grounds upon which child support payments may be revised. A child support award may be amended based on changes in income or financial status of either parent. O.C.G.A. § 19–6–19(a). Child support payments may also be revised due to remarriage or voluntary cohabitation of the former spouse. O.C.G.A. § 19–6–19(b). Any right to have the state force a noncustodial parent to make payments, is, like so many other legal rights, subject to modification by the "public acts of government." *Bowen,* 483 U.S. at 608, 107 S.Ct. 3008 (quoting *Reichelderfer v. Quinn,* 287 U.S. 315, 319, 53 S.Ct. 177, 77 L.Ed. 331 (1932)). As child support payments may be prospectively modified for myriad reasons, a parent's election to modify these payments by assigning them to the state does not unduly interfere with the recipient child's expectations. Thus, as the Supreme Court notes, "[t]his prospective change in the child's expectations concerning future use of support payments is far from anything we have ever deemed a taking." *Bowen,* 483 U.S. at 608, 107 S.Ct. 3008.

---

**2.** Plaintiffs do not present a general challenge to the constitutionality of assigning child support payments to the state. Rather, they limit their challenge to cases in which, they allege, the children whose support is assigned receive no additional assistance as a quid pro quo from the state. As Plaintiffs effectively

concede the general ability of custodial parents to assign child support payments to the state, they implicitly acknowledge the unreasonableness of any expectation the child may have in continued identical child support payments.

The third and final *Penn Central* factor is the character of the governmental action. *Penn Central*, 438 U.S. at 124, 98 S.Ct. 2646. In *Bowen*, the Court recognized that the government is required to make hard choices and balance various incentives in deciding how to allocate benefits in welfare programs. *Id.* at 608, 107 S.Ct. 3008. The Court held that a "decision to include child support as part of family income certainly does not implicate the type of concerns that the Takings Clause protects." *Id.*

In *Williams ex rel. Ricard v. Humphreys*, 125 F.Supp.2d 881 (S.D.Ind.2000), the court held that Indiana's policy of requiring excluded children to assign their child support payments to the state violated the Takings Clause. The district court noted that, pursuant to Indiana's family cap program, "[i]n 'return' for the excluded child's assignment of support payments, the family's overall benefits do not change at all." *Id.* This cannot be said of the Georgia TANF program. As discussed previously, the GAP payments delivered to Plaintiffs pursuant to the Georgia TANF program represent a significant increase in Plaintiffs' families' overall benefits.

Moreover, as acknowledged by the Supreme Court in *Bowen*, involvement in the TANF program, and the subsequent assignment of child support payments, is *voluntary*. The law does not require any custodial parent to apply for TANF benefits. A parent, the law must presume, would only apply for benefits when he or she believes that the family as a whole— and each child committed to his or her custody—will be better off with the family receiving benefits than without. *Bowen*, 483 U.S. at 608–09, 107 S.Ct. 3008. Plaintiffs' custodial parents deny that their assignment of child support payments was voluntary, as they assert that they did not understand the terms of the application for TANF benefits. Specifically, Boston and Pait assert that they did not know that child support for their "capped" children would be assigned to and ultimately kept by the state. (Boston Dep. at 48–51; Pait Dep. at 24–28.) Any misunderstanding of these terms is unfortunate. However, the language of an application for TANF benefits clearly states that by accepting assistance, the parent assigns to Georgia the right to any child support. (Boston Dep., Ex. 8; Pait Dep., Ex. 10.) Boston and Pait signed statements acknowledging that they agreed to this condition and to Georgia's family cap. (Boston Dep., Exs. 8, 9; Pait Dep., Exs. 10, 11.) Thus, their failure to comprehend the terms of the applications for TANF benefits do not make their participation in the program or its child support assignment requirement involuntary. A custodial parent's voluntary decision to enter the program, and thereby assign child support payments to the state, does not create an unconstitutional taking by the state.

The Supreme Court concluded its analysis in *Bowen* with a broader statement of the court's role in public assistance cases. Quoting Justice Stewart, the Court in *Bowen* noted:

> We do not decide today that the … regulation is wise, that it best fulfills the relevant social and economic objectives that [Congress] might ideally espouse, or that a more just and humane system could not be devised. Conflicting claims of morality and intelligence are raised by opponents and proponents of almost every measure…. But the intractable economic, social, and even philosophical problems presented by public welfare assistance programs are not the business of this Court. The Constitution may impose certain procedural safeguards upon systems of welfare administration. *Goldberg v. Kelly*, [397 U.S.

254, 90 S.Ct. 1011 (1970) ]. But the Constitution does not empower this Court to second-guess ... officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients.

*Bowen,* 483 U.S. at 609, 107 S.Ct. 3008 (quoting *Dandridge v. Williams,* 397 U.S. 471, 487, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)). The same considerations apply here to the state. Application of the three *Penn Central* factors counsel the Court to find that the assignment of child support payments for "capped" children does not constitute a taking in violation of the Fourteenth Amendment. Summary judgment for the Defendant is proper.

## IV. *CONCLUSION*

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment [Doc. 29] is DENIED, and Defendant's Motion for Summary Judgment [Doc. 32] is GRANTED.